# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00231-CV

**In re Chris Elliott**

## ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## C O N C U R R I N G   O P I N I O N

While I join in the Court's judgment conditionally granting mandamus relief, I must respectfully differ with its reasoning. The Court can—and should—resolve this discovery-related original proceeding without need to address the intricacies of the Texas Citizens Participation Act (TCPA).[1] In fact, the relator, Elliott, would have no grounds for relief under the TCPA if the Act is construed in the manner the Court advocates. Worse, the Court's unwarranted broad pronouncements regarding the nature of a "legal action" under the TCPA also misread the Act and will sow further confusion and misapplication in future cases, to the detriment of the Legislature's underlying policy goals.

## WHAT THIS CASE IS ACTUALLY ABOUT

This original proceeding arises from what is, at its core, a discovery dispute, albeit one implicating some First Amendment concerns. That dispute has centered on the attempt by MagneGas to obtain, through Rule of Civil Procedure 202, a deposition calculated to unmask the

---

[1] *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 4, 2011 Tex. Gen. Laws 961, 964 (effective June 17, 2011), *codified at* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011.

anonymous person or persons behind "The Pump Stopper's" December 2015 article without regard to First Amendment limitations on that discovery. The First Amendment has been authoritatively held to encompass a right to speak anonymously,[2] and this is no less so when the speech is communicated on the Internet.[3] As with other aspects of First Amendment protections, this right is not absolute[4] and may yield in instances where the First Amendment would not bar remedy for the speech in question, such as when the speech is actionable defamation.[5] The potential claims that MagneGas purports to investigate here are the sort that might eventually be shown to fall into that category, predicated as they are on publication of alleged "false and misleading information" about the company.[6] But this does not mean that MagneGas can obtain discovery to unmask "The Pump Stopper" based on its Rule 202 petition alone. Rather, because the First Amendment right to anonymous speech would be rendered meaningless if it could be pierced merely by pleading a potentially actionable speech-based claim, a prevailing rule has evolved whereby the claimant

---

[2] *See Buckley v. American Constitutional Law Found., Inc.*, 525 U.S. 182, 199–200 (1999); *McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342–43, 356 (1995).

[3] *See Reno v. American Civil Liberties Union*, 521 U.S. 844, 870 (1997).

[4] *See McIntyre*, 514 U.S. at 353.

[5] *See In re Does 1-10*, 242 S.W.3d 805, 820 (Tex. App.—Texarkana 2007, orig. proceeding) (compiling authorities to effect that anonymous speakers "may not freely defame individuals without facing civil responsibility for their acts").

[6] Although MagneGas's Rule 202 petition does not specify the legal theories on which it expects to rely, its counsel indicated during the hearing on the petition that defamation, "market manipulation," and "securities fraud" are among the possibilities counsel foresees.

2

must also make a threshold showing of the claim's potential merit (short of proving the alleged wrongdoer's identity) as a precondition for that discovery.[7]

The precise threshold showing of merit required of the claimant remains somewhat unsettled,[8] although the single Texas state appellate court that has considered the question thus far—our sister court in Texarkana—applied a "prima facie case for each essential element of the claim in question" standard having some parallels to Section 27.005(c) of the TCPA, the Act's provision prescribing the claimant's required showing to avoid dismissal in the event the movant meets its initial burden.[9] In fact, some anecdotal historical sources assert that the drafters of Section 27.005(c) borrowed the provision's "prima facie case for each essential element of the claim in question" component from the Texarkana opinion, so as to extend to all speakers the protections our sister court held to apply to anonymous speakers,[10] although the Act's text does not state this

---

[7] *See Does 1-10*, 242 S.W.3d at 820–21 (compiling authorities).

[8] *See id*. at 821–23.

[9] *Compare Does 1-10*, 242 S.W.3d at 821–23 ("[T]o obtain discovery of an anonymous defendant's identity . . . , a defamation plaintiff must submit sufficient evidence to establish a *prima facie* case for each essential element of the claim in question . . . *within plaintiff's control*." (quoting *Best W. Int'l v. Doe*, No. CV-06-1537-PHX-DGC, 2006 U.S. Dist. LEXIS 56014, at *12 (D. Ariz. July 25, 2006, order) (quoting *Doe v. Cahill*, 884 A.2d 451, 465 (Del. 2005)) (alterations in original))), *with* Tex. Civ. Prac. & Rem. Code § 27.005(c) (assuming movant meets initial burden prescribed in (b), "the party bringing the legal action" can avoid dismissal if it "establishes by clear and specific evidence a prima facie case for each essential element of the claim in question").

[10] *See* Laura Lee Prather & Justice Jane Bland, *Bullies Beware: Safeguarding Constitutional Rights Through Anti-SLAPP in Texas*, 47 Tex. Tech L. Rev. 725, 748–49 (2015) ("The ["prima facie case for each essential element of the claim in question"] test is derived from *In re Does* . . . . By incorporating this test into the [TCPA], the [L]egislature chose to apply the same standard to claims brought against non-anonymous speakers as claims brought against anonymous ones."); *see also* Hearings on S.B. 1565 before Senate Committee on State Affairs, 82d Leg., R.S. 3–4 (Apr. 4, 2011) (transcript available from Capitol Research Services) (Prather testifying that standard is "the same analysis that is done in an anonymous speech case, where somebody comes forward and they want

explicitly.[11] Regardless, we can at least conclude that the First Amendment requires *some* threshold showing of a claim's potential merit as a precondition of unmasking the anonymous speaker or speakers.[12] And the TCPA did not diminish this preexisting First Amendment protection for anonymous speech, nor could have, but instead explicitly disclaimed any intent to "abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions."[13]

The district court ordered Elliott's Rule 202 deposition without requiring a threshold showing of any kind regarding the merits of MagneGas's potential claims and despite objections from Elliott and one of the anonymous speakers (Doe) that preserved the complaint. Elliott brings this First Amendment objection forward as his principal asserted ground for mandamus relief. This

---

to know what – what the web – web address is behind a person who's posted an anonymous blog. The court looks at the very beginning of the case to determine whether or not there is any basis for the lawsuit. And if they determine that there is a basis for the lawsuit, they can get that anonymous speaker's information. If they don't determine that, then they can't get the anonymous speaker's information. So this just creates the same level playing field for anonymous and non-anonymous speech."). Prather, an attorney who represents open-government and media interests, is widely credited with an integral advocacy role in the TCPA's drafting and passage by the Legislature.

[11] *Cf. Serafine v. Blunt*, 466 S.W.3d 352, 367 (Tex. App.—Austin 2015, no pet.) (Pemberton, J, concurring) (observing, with regard to anti-SLAPP concern emphasized by the TCPA's legislative advocates, "the text of the Act itself makes no explicit mention of SLAPPs, nor of any related concept like sham litigation[,] [a]nd, as the Texas Supreme Court has repeatedly instructed lower courts, we are to rely upon the statutory text the Legislature actually used, not extrinsic legislative history or other possible indicia of what legislators might have meant subjectively, as our paramount guide to the 'legislative intent' we are to ascertain and follow faithfully." (citations omitted)).

[12] *See Does 1-10*, 242 S.W.3d at 820–21.

[13] Tex. Civ. Prac. & Rem. Code § 27.011(a).

4

ground plainly has merit, and mandamus relief should conditionally issue for this reason alone.[14]

This Court needed to say no more at this juncture.

## THE TCPA IS UNHELPFUL IN RESOLVING THIS CASE

The Court chooses a more circuitous analytical path, endorsing a novel alternative theory aimed at invoking the TCPA's more general protections against speech-based claims and related discovery. Prior to the hearing on MagneGas's Rule 202 petition, counsel representing the anonymous speaker Doe (who, incidentally, also represents Elliott, the witness whose deposition was being sought) filed on Doe's behalf what purports to be a "motion to dismiss" the Rule 202 petition under TCPA Section 27.003(a), the Act's provision authorizing a motion to dismiss "a legal action" alleged to be "based on, relate[d] to, or . . . in response to a party's exercise of the right of free speech, right to petition, or right of association."[15] In turn, emphasizing the "motion to dismiss" filed for Doe, Elliott asserted that the Rule 202 deposition was automatically stayed by TCPA Section 27.003(c), which provides generally that "on the filing of a motion under this section, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss."[16] Because there is no question that the Rule 202 deposition MagneGas seeks would be "discovery"

---

[14] *See In re Wolfe*, 341 S.W.3d 932, 933 (Tex. 2011) (per curiam) (orig. proceeding) ("An improper order under Rule 202 may be set aside by mandamus." (citing *In re Jorden*, 249 S.W.3d 416, 420 (Tex. 2008) (orig. proceeding); *see also In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998) (per curiam) (orig. proceeding) ("A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or, stated differently, when it acts without reference to guiding rules and principles.") (citation omitted).

[15] Tex. Civ. Prac. & Rem. Code § 27.003(a).

[16] *Id*. § 27.003(c).

within the meaning of Section 27.003(c)[17] and that the district court did not rule on Doe's "motion to dismiss" before signing the challenged order granting the Rule 202 deposition, Elliott's entitlement to relief under (c) turns on whether Doe's motion was in fact "a motion under this section" triggering the stay—i.e., a "motion to dismiss" authorized by (a)—and whether the deposition MagneGas seeks would be "discovery *in the legal action*" Doe has moved to dismiss.

The Court endorses Elliott and Doe's creative invocation of the TCPA, and the cornerstone of its reasoning is that MagneGas's Rule 202 petition or proceeding is, *in itself*, a "legal action" that Doe could move to dismiss under Section 27.003(a), making the requested deposition—the sole relief sought in that "legal action"—also "discovery in the legal action" that is suspended by 27.003(c). As an initial observation, the Court's venture into the intricacies of the TCPA is ultimately of little practical value in resolving the pivotal issue in this proceeding—which, again, centers on the extent to which MagneGas can obtain discovery of the identity of the Doe or Does behind "The Pump Stopper's" article in light of the First Amendment right to speak anonymously. The Court has merely shifted the procedural context of the controlling First Amendment analysis from a threshold consideration controlling MagneGas's primary asserted right to obtain the information via Rule 202 to more peripheral battlegrounds within the TCPA's procedural framework, including whether Doe has met his initial burden under TCPA Section 27.005(b)[18] and then whether MagneGas can obtain that same information in the guise

---

[17] *See Jorden*, 249 S.W.3d at 420 (holding that Rule 202 depositions fall within Medical Liability Act's general ban of "all discovery" in a "healthcare liability claim" prior to service of expert report).

[18] *See* Tex. Civ. Prac. & Rem. Code § 27.005(b) (moving party must "show[] by a preponderance of the evidence that the legal action is based on, relates to, or is in response to the party's exercise of" protected expression as defined in the TCPA).

6

of "specified and limited discovery relevant to the [dismissal] motion" authorized by TCPA Section 27.006(b).[19] The latter issue would squarely implicate Doe's First Amendment right to speak anonymously, and thus the parties would revolve back to the same First Amendment dispute already raised directly by MagneGas's Rule 202 petition itself.

Under the circumstances here, at least, overlaying the parties' First Amendment dispute with the TCPA's procedural framework serves only to delay and complicate resolution unnecessarily, contrary to the Act's manifest purposes to secure quick and inexpensive dismissal of meritless "legal actions" that threaten expressive freedoms.[20] The parties—and the jurisprudence—are better served by resolving this proceeding based on Elliott's First Amendment objection rather than through the Court's unnecessary analytical detour through the Act.

## IN ANY EVENT, ELLIOTT WOULD HAVE NO RIGHT TO RELIEF UNDER THE TCPA IF THE COURT'S CENTRAL PREMISE IS CORRECT

Moreover, if, as the Court holds, MagneGas's Rule 202 petition is the relevant "legal action" under the TCPA, that central premise would be fatal to Elliott's attempt to invoke the discovery stay under Section 27.003(c). This is apparent from the text of TCPA Section 27.003(a),

---

[19] *See* Tex. Civ. Prac. & Rem. Code §§ 27.003(c), .006(b). If, as the Court holds, MagneGas would have to present a "prima facie case for each essential element" of MagneGas's underlying potential claims, *see id.* § 27.005(c), slip op. at 18–19, MagneGas ordinarily could not meet that burden without identifying the potential alleged wrongdoer, prompting the need for discovery of that identity through 27.006(b).

[20] *See id*. § 27.002 ("The purpose of this chapter [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *id.* §§ 27.003–.005 (prescribing mechanisms for threshold testing and expedited dismissal of "legal actions" that implicate expression the Act protects).

7

which states in full: "If a legal action is based on, relates to, or is in response to *a party's* exercise of the right of free speech, right to petition, or right of association, *that party* may file a motion to dismiss the legal action."[21] A "party" denotes a person named in a pleading against whom the relief is sought.[22] Consequently, accepting the Court's premise that MagneGas's Rule 202 petition is the relevant "legal action," only Elliott, not Doe, could be considered "a party" authorized by Section 27.003(a) to file a "motion to dismiss." And because it is solely the non-"party" Doe, not Elliott, that would have filed a "motion to dismiss" here, there would be no "motion under this section" that triggered Section 27.003(c)'s suspension of "discovery in the legal action."[23] Accordingly, the Court's own theory of this case would eviscerate Elliott's claimed entitlement to mandamus relief under Section 27.003(c). The Court's detour through the TCPA should go no further.

## THE COURT'S VIEW OF A TCPA "LEGAL ACTION" IS MISTAKEN AND PROBLEMATIC

The Court proceeds nonetheless to pronounce that Rule 202 proceedings, or at least those like MagneGas's that seek to investigate potential claims, are in themselves "legal actions" subject to motions to dismiss under TCPA Section 27.003(a).[24] In so doing, the Court speaks to what

---

[21] *Id*. § 27.003(a) (emphases added).

[22] *See Zanchi v. Lane*, 408 S.W.3d 373, 377–80 (Tex. 2013) (construing "party" as used in Medical Liability Act's expert-report requirement, relying in part on dictionary definitions and usage in Texas Rules of Civil Procedure).

[23] *See* Tex. Civ. Prac. & Rem. Code § 27.003(c) (". . . on the filing of a motion *under this section*, all discovery in the legal action is suspended until the court has ruled on the motion to dismiss." (Emphasis added)).

[24] *See* slip op. at 6–8, 11–17.

is apparently an "issue of first impression"[25] regarding the interaction between Rule 202 and the

TCPA.[26] Even more significant to the jurisprudence are the implications of the Court's underlying

analysis regarding the nature and scope of a "legal action" under the TCPA. As I've urged my

colleagues previously, the TCPA's "legal action" definition is among the Act's features whose

facially broad wording invites attempts by resourceful litigants to extend the Act's powerful

dismissal and cost-shifting mechanisms to a vast range of cases and court filings having little to do

with any conventional understanding of the First Amendment,[27] let alone the SLAPP paradigm

---

[25] *See id*. at 7.

[26] This issue is a sort of converse to the one addressed recently by our Dallas sister court, which held that statements made in a Rule 202 petition qualify as an "exercise of the right to petition" protected by the TCPA against a "legal action" that is "based on, relates to, or is in response to" such "exercise." *See Watson v. Hardman*, ___ S.W.3d ___, No. 05-15–01355-CV, 2016 Tex. App. LEXIS 7111, *6–10 (Tex. App.—Dallas July 6, 2016, no. pet. h.) (reasoning that "Rule 202 proceeding is a 'judicial proceeding' for Chapter 27 purposes," such that the Rule 202 petition was "a communication in or pertaining to a judicial proceeding" (citing Tex. Civ. Prac. & Rem. Code § 27.001(4)(A)(i) (defining "exercise of the right to petition" as, inter alia, "a communication in or pertaining to . . . a judicial proceeding")); *accord Serafine*, 466 S.W.3d at 359–60 (holding that lawsuit and related lis pendens filing sufficed as "exercise of the right to petition" because these were "communication[s] in or pertaining to . . . a judicial proceeding," namely the suit itself); *id*. at 377–90 (Pemberton, J., concurring) (agreeing with that conclusion under analysis of "exercise of right to petition" definition informed by background First Amendment principles).

[27] *See Serafine*, 466 S.W.3d at 370 (Pemberton, J., concurring) (noting that "some of our sister courts have observed [that] 'legal action' would facially encompass even motions, such as those seeking summary judgment or sanctions, at least to the extent that relief would be considered 'legal or equitable relief'" and that "the same logic" would seemingly apply "even [to] dismissal motions asserted under the TCPA itself . . . if dismissal with cost-shifting and sanctions can be considered 'legal or equitable relief.'" (citation omitted)). To be sure, a viable TCPA dismissal motion also requires proof by a "preponderance of the evidence" that the "legal action" (as it were) is "based on, relates to, or is in response to" the "exercise of" one of the expressive rights protected by the statute. *See* Tex. Civ. Prac. & Rem. Code § 27.005(b). But if those other analytical components are as broad as this Court has reasoned previously, they would present but a small hurdle for creative lawyers and litigants. *Cf. Serafine*, 466 S.W.3d at 378–79 (Pemberton, J., concurring) (suggesting that if TCPA definitions of protected expression are read in isolation, a speaker could implicate all three categories of expression protected under the Act through a single sentence spoken

emphasized by the Act's champions,[28] to the point of effectively creating a broadly applicable "de facto loser-pays regime tied to summary dispositions."[29]

To the extent any such ramifications truly reflect the Legislature's intent expressed through the TCPA, it is not our proper judicial role to countermand them, of course, barring some constitutional impediment. But a correct understanding of the TCPA requires more than first-blush impressions of words read in isolation—we must also consider the larger statutory and jurisprudential context that informs the meaning of statutory text.[30] And while the majority here

privately to his or her spouse about a court case), 390 ("[W]hen combined with an 'exercise of the right to petition' . . . that [has been construed to] encompass[] most (if not all) claims filed in court and a 'legal action' definition that seemingly encompasses most (if not all) claims filed in court, the effect of the prevailing construction [of "based on, related to, or in response to] . . . is to make the TCPA available as a tactical weapon in a vast number of instances in which litigants assert competing claims against one another, at least for the party who files its claims first"); *see also Neyland v. Thompson*, No. 03-13-00643-CV, 2015 Tex. App. LEXIS 3337, at *42 (Tex. App.—Austin Apr. 7, 2015, no pet.) (mem. op.) (Field, J., concurring) ("It seems that any skilled litigator could figure out a way to file a motion to dismiss under the TCPA in nearly every case, in the hope that the [legal action] will not only be dismissed, but that the movant will also be awarded attorneys' fees.").

[28] *See Serafine*, 466 S.W.3d at 365–67 (Pemberton, J., concurring) (summarizing anecdotal legislative history emphasizing "anti-SLAPP" concerns); *see also* Prather & Bland, *supra* note 10, at 725–801 (using "anti-SLAPP" throughout article to characterize TCPA's procedural mechanisms and policy goals).

[29] *Serafine*, 466 S.W.3d at 390 (Pemberton, J., concurring).

[30] *See, e.g., In re Office of the Att'y Gen.*, 456 S.W.3d 153, 155 (Tex. 2015) (per curiam) ("When construing statutes, or anything else, one cannot divorce text from context," as "[t]he meaning of words read in isolation is frequently contrary to the meaning of words read contextually in light of what surrounds them."); *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (noting role of background law in informing meaning of statutory text (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)); *Bridgestone/Firestone, Inc. v. Glyn-Jones*, 878 S.W.2d 132, 133 (Tex. 1994) ("Words in a vacuum mean nothing. Only in the context of the remainder of the statute can the true meaning of a single provision be made clear." (citing *Merchants Fast Motor Lines, Inc. v. Railroad Comm'n*, 573 S.W.2d 502, 505 (Tex. 1978)); *Barr v. Bernhard*, 562 S.W.2d 844, 849 (Tex. 1978))).

10

scorns my insistence on such "deeper digging" and resultantly "more complicated" view of the TCPA's "plain and broad wording,"[31] I make no apologies for undertaking the effort. For when courts fail to take account of both text and context in ascertaining the TCPA's meaning, they undermine not only the Legislature's intent in the statute (as with all statutes), but also "the sound operation of our civil justice system [and] the sometimes-competing rights of Texans"—including liberties and protections at the core of our governmental system—"that the statute was expressly intended to balance and reconcile."[32]

We must presume that the Legislature was aware of the existence of Rule 202 and the pre-suit depositions it authorizes when enacting the TCPA,[33] as these mechanisms predate the Act.[34] Yet the Legislature did not explicitly mention Rule 202 or pre-suit depositions anywhere in the TCPA. But it did provide a definition for "legal action," as previously noted:

> a lawsuit, cause of action, petition, complaint, cross-claim, or counterclaim or any other judicial pleading or filing that requests legal or equitable relief.[35]

---

[31] Slip op. at 19.

[32] *Serafine*, 466 S.W.3d at 394 (Pemberton, J., concurring). And I remain hopeful that someone outside this three-judge panel might be listening. *See id*. at 394–95.

[33] *Allen*, 366 S.W.3d at 706 (quoting *Acker*, 790 S.W.2d at 301)).

[34] *See* Citizens Participation Act, 82d Leg., R.S., ch. 341, § 4, 2011 Tex. Gen. Laws 961, 964 (effective June 17, 2011); *In re Doe (Trooper)*, 444 S.W.3d 603, 605–07 & nn.8–12 (Tex. 2014) (orig. proceeding) (discussing Rule 202's adoption as part of the 1999 Texas civil discovery rules revisions and that rule's historical antecedents).

[35] Tex. Civ. Prac. & Rem. Code § 27.001(6).

This definition "is both expansive and varied, referring to an entire action or proceeding ('lawsuit'); particular pleading instruments and claims for relief ('petition, complaint, cross-claim, or counterclaim,' plus the catch-all of 'any other judicial pleading or filing that requests legal or equitable relief'); and also 'cause of action,' which generally denotes particular facts that would entitle a person to seek some form of legal or equitable relief."[36]

The Court asserts that a Rule 202 petition qualifies as a "legal action" by virtue of two of these components of the TCPA definition. First, the Court relies on "petition," deducing that because Rule 202 terms the pleading made under that rule a "petition,"[37] ergo that pleading is a "petition" under the TCPA's "legal action" definition as well.[38] Second, the Court reasons similarly that a Rule 202 petition seeking to investigate potential claims (the specific remedy MagneGas seeks under the rule) falls within "any other judicial pleading or filing that requests . . . equitable relief," emphasizing that this remedy now authorized under Rule 202 can be termed "equitable" to the extent it derives historically from the former Rule 737 bill of discovery and then from remedies provided by English chancery courts.[39] I'll grant that the word "petition" appears in both Rule 202 and the TCPA "legal action" definition, and I have no quarrel with the Court's basic depiction of Rule 202's

---

[36] *Serafine*, 466 S.W.3d at 370 (Pemberton, J., concurring) (citing *Jaster v. Comet II Constr., Inc.*, 438 S.W.3d 556, 563–71 (Tex. 2014) (plurality op.) (discussing at length the distinctions between an "action," "lawsuit," or "proceeding" and a "cause of action" (citing *Loaisiga v. Cerda*, 379 S.W.3d 248, 255 (Tex. 2012); *A.H. Belo Corp. v. Blanton*, 129 S.W.2d 619, 621 (Tex. 1939); *Magill v. Watson*, 409 S.W.3d 673, 679 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Bell v. Moores*, 832 S.W.2d 749, 752 (Tex. App.—Houston [14th Dist.] 1992, writ denied); *Elmo v. James*, 282 S.W. 835, 839 (Tex. Civ. App.—Fort Worth 1926, writ dism'd w.o.j.)))).

[37] *See* Tex. R. Civ. P. 202.2.

[38] Slip op. at 13–14.

[39] Slip op. at 14–15 (citing *Trooper*, 444 S.W.3d at 606–07 & nn.10–14).

12

historical origins;[40] in fact, I'd add that vestiges of the equitable concepts that guided application of

Rule 202 antecedents have survived in the current rule itself.[41] But these observations in themselves

tell us little regarding the meaning and sense in which the Legislature used "petition" and "equitable

relief" *in the TCPA's "legal action" definition*. That inquiry requires deeper digging into the context

of usage both within the definition and in the TCPA as a whole,[42] and we cannot merely assume that

the Legislature intended whatever meanings of "petition" or "equitable relief" might exist elsewhere.

Although the term "petition" is sometimes used more broadly or generically in regard

to court filings, as in the Rule 202 "petition,"[43] the term also has a narrower, more technical

connotation—the pleading instrument prescribed under the Texas Rules of Civil Procedure through

which a plaintiff initiates and maintains a civil suit.[44] This sort of "petition" seeks substantive relief,

---

[40] *See also* Nathan L. Hecht & Robert H. Pemberton, *A Guide to the 1999 Texas Discovery Rule Revisions*, at 17 (1998) (Texas Supreme Court's rules liaison justice and its then-Rules Attorney explaining that "Rule 202 is a rewrite of former Rule 187 that is broadened somewhat to expressly permit discovery depositions prior to suit and to investigate potential claims. To this extent, Rule 202 replaces and limits the 'bill of discovery' of repealed Rule 737.").

[41] *See* Tex. R. Civ. P. 202 cmt. 1 (noting that Rule 202 "applies to all discovery before suit covered by former rules governing depositions to perpetuate testimony and bills of discovery"); *id.* at cmt. 2 ("The bill of discovery procedure, which Rule 202 incorporates, is equitable in nature, and a court must not permit it to be used inequitably.").

[42] *See Office of the Att'y Gen.*, 456 S.W.3d at 155; *Bridgestone/Firestone, Inc.*, 878 S.W.2d at 133; *see also*, *e.g.*, *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013) ("We examine statutes as a whole to contextually give meaning to every provision." (citing *State v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002))).

[43] *See, e.g.*, Tex. R. Civ. P. 329(a) (referring to trial court grant of new trial "upon petition of the defendant"); Tex. R. App. P. 52 ("petition" for relief in original proceedings); *id*. R. 53 ("petition for review" in Texas Supreme Court).

[44] *See* Tex. R. Civ. P. 22 ("A civil suit in the district or county court shall be commenced by a petition filed in the office of the clerk."); *see also id*. R. 500.2(t) (similarly defining "petition" in

as evident in the rules' additional requirements that the "petition" include allegations giving fair notice of "the cause of action" (again, the facts giving rise to a substantive right of relief) supporting "a claim for relief."[45] This narrower usage of "petition" thus corresponds not only to the definition's accompanying references to "lawsuit" (the entire action being brought) and "cause of action" (factual bases for particular claims for relief that may be asserted within a lawsuit), but also the references to pleading devices through which parties in a lawsuit assert substantive claims or causes of actions—"complaint" (the federal counterpart to the Texas "petition"),[46] and "counterclaim" and "cross-claim" (terms for pleadings through which defendants assert such claims or causes of action under both the Texas and federal rules).[47] And this understanding of the meaning and scope of "petition" would not be altered by the definition's concluding catch-all component, "any other judicial pleading or filing that requests legal or equitable relief." Rather, the converse is true: "any other judicial pleading or filing that requests legal or equitable relief" is to be construed to have meaning and scope limited contextually to the same general kind or class as the specific references that precede it.[48] These contextual considerations point toward an intended usage of "petition" in

Justice Court as "a formal written application stating a party's claims and requesting relief from the court" and "is the first document filed with the court to begin a lawsuit").

[45]  *See id*. R. 47.

[46]  *See* Fed. R. Civ. P. 3.

[47]  *See* Tex. R. Civ. P. 97; Fed. R. Civ. P. 13.

[48]  *See, e.g.*, *Ross v. St. Luke's Episcopal Hosp*., 462 S.W.3d 496, 504 & n.1 (Tex. 2015) (applying doctrine of ejusdem generis—" when words of a general nature are used in the connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation"—in construing "catchall" reference to claims for "other claimed departure from accepted standards of . . . safety" in Medical Liability Act's definition of "health care liability claim" to require "a substantive relationship with the providing

14

the sense of the pleading through which a plaintiff brings a lawsuit and asserts substantive causes of action or claims for relief against another, as opposed to the "petition" used to obtain discovery under Rule 202.

Whether a Rule 202 petition might fall within "any other judicial pleading or filing that requests . . . equitable relief"—the Court's alternative rationale—is potentially a closer call, at least when considering the internal structure of the "legal action" definition standing alone. While the definition's "any other judicial pleading or filing that requests legal or equitable relief" catchall is contextually limited to the same general kind or class as the specific references preceding it,[49] we must presume that the Legislature did not intend a mere redundancy, either,[50] and thus that the catchall must presumably capture some range of "judicial pleading or filings" that are not necessarily a "lawsuit" or one of the pleading instruments previously enumerated within the definition, and would not necessarily assert a "cause of action." Similarly, the Texas Supreme Court's recent construction of somewhat parallel language in the TCPA provisions governing fee awards would imply that the " . . . that requests legal or equitable relief" modifier should be construed to operate only against the definition's reference to "any other judicial pleading or filing" and not as to the

---

of medical or health care," consistent with definition's preceding references to claims for "treatment" or "lack of treatment" (quoting *Hilco Elec. Co-op v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003) and citing Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 1999 (2012)).

[49] *See id.*

[50] *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) (noting presumption that the "Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen" (citing *In re M.N.*, 262 S.W.3d 799, 802 (Tex. 2008))).

preceding categories of pleadings or filings specifically listed in the definition.[51] These observations would suggest that the common kind or class "any other judicial pleading or filing that requests legal or equitable relief" shares with the definition's preceding components is being a "judicial pleading or filing" and not necessarily that the categories all seek "legal or equitable relief."[52] Whether this points to "legal or equitable relief" that is broader or narrower than the relief sought in a "lawsuit," "cause of action," 'petition," etc., is not immediately apparent from the "legal action" definition in itself.

But the Court's notion that "equitable relief" within the definition refers to any "judicial pleading or filing" having equitable origins or components should give some pause. A Rule 202 petition seeking to investigate potential claims is hardly the only Texas "judicial pleading or filing" that would "request . . . equitable relief" in this sense.[53] Moreover, as the Court seems to

---

[51] *See Sullivan v. Abraham*, 488 S.W.3d 294, 297–99 (Tex. 2016) (relying on last-antecedent canon and punctuation to conclude that "as justice and equity may require" modifier in Section 27.009(a)(1)'s mandatory award of "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require" applies only to "other expenses incurred" and not "court costs" or "reasonable attorney's fees").

[52] *Cf. id*. (reasoning that provision's structure indicated that "court costs" and "reasonable attorney's fees" are types of "expenses incurred," while "as justice and equity require" applies only to the concluding general category of "expenses incurred").

[53] *See, e.g.*, *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) ("A bill of review is an equitable proceeding brought by a party seeking to set aside a prior judgment that is no longer subject to challenge by a motion for new trial or appeal.") (citations omitted); *Craddock v. Sunshine Bus Lines, Inc.*, 133 S.W.2d 124, 126 (Tex. 1939) (announcing guiding rule or principle—"ha[ving] the sanction of equity"—for trial courts to follow when deciding whether to set aside a default judgment and order a new trial); 5 McDonald & Carlson Tex. Civ. Prac. § 28:17 (2d. ed.) ("A motion for new trial may be based upon legal or equitable grounds. . . . An equitable motion . . . seeks to invoke the power of the court to grant a new trial even though the movant failed to timely act and suffered an adverse judgment."); *see also Rivercenter Assocs. v. Rivera*, 858 S.W.2d 366, 367 (Tex. 1993) (orig. proceeding) ("Although mandamus is not an equitable remedy, its issuance is largely controlled by equitable principles." (citing *Callahan v. Giles*, 155 S.W.2d 793, 795 (1941)).

16

acknowledge, the bill of discovery originated as a means of obtaining through equity *any* discovery

from parties *to a pending suit* in the era before modern discovery as a matter of right was made

available.[54] To this extent, the equitable bill of discovery could be considered a historical antecedent

not only to the Rule 202 pre-suit deposition to investigate claims, but also most if not all of the

panoply of other discovery devices that the Rules of Civil Procedure now make available.[55] And

while granting there are distinctions in timing and procedure, I question the extent to which the

substantive nature of the relief awarded in a Rule 202 proceeding—at bottom, a court-ordered

deposition of a nonparty—is materially different from a court order or even a subpoena compelling

a deposition or other discovery from nonparties that is sought under other rules.[56] Although I cannot

fairly accuse the Court of endorsing a wholly unbounded notion of "legal action," the Court's

reasoning would nonetheless imply that a vast range of court filings could be attacked through TCPA

dismissal motions.

An alternative view of the "legal action" definition's reference to "legal or equitable

relief" is that it denotes the traditional law-equity distinction that lives on in what are termed the

"legal" versus "equitable" remedies obtainable when liability under some substantive right of

recovery is proven; i.e., the "legal" remedy of money damages versus the "equitable" relief of

injunctions, specific performance, and the like.[57] From this perspective, the catchall "any other

---

[54] Slip op. at 14–15 (citing *Trooper*, 444 S.W.3d at 606–07 & nn. 10–14).

[55] *See Trooper*, 444 S.W.3d at 606–07 (suggesting that "the 1941 [Texas] Rules of Civil Procedure might have rendered [the bill of discovery in its original form] obsolete.").

[56] *See* Tex. R. Civ. P. 176 (subpoena), 205 (discovery from nonparties).

[57] *See, e.g.*, Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (2011) (noting "[e]lementary generalizations . . . for the classification of remedies" within the law of

judicial pleading or filing that requests legal or equitable relief" would function primarily as a safeguard against creative repleading of what are substantively lawsuits, causes of action, petitions, complaints, counterclaims, or cross-claims so as to avoid the TCPA's dismissal mechanisms.

Examination of the TCPA as a whole confirms that the Legislature intended this narrower notion of "any other judicial pleading or filing that requests legal or equitable relief," as well as the more technical meaning of "petition" urged above. Instructive provisions begin with Section 27.005, which prescribes the standards under which Section 27.003(a) motions to dismiss "the legal action" are decided.[58] Assuming the movant meets its initial burden, Section 27.005(c) specifies that "the party bringing *the legal action*" can avoid its dismissal only if the party "establishes by clear and specific evidence a prima facie case for each *essential element of the claim in question*."[59] If that party makes that required showing so as to survive dismissal, Section 27.005(d) contemplates further burden-shifting back to the movant to "establish[] by a preponderance of the evidence each *essential element* of a valid *defense* to the nonmovant's *claim*."[60] And in performing these analyses and also in ascertaining whether a movant has met its initial

restitution, including that "a judgment for money, without resort to any of the ancillary remedial devices traditionally available in equity but not at law" is presumptively a legal remedy, whereas "equitable remedies . . . order the defendant to do something"); 1 Dan B. Dobbs, *Law of Remedies* § 1.2 (2d ed. 1993) ("The damages remedy was historically a legal remedy. The injunction and most other coercive remedies were equitable."); *see also Hanson Aggregates West, Inc. v. Ford*, 338 S.W.3d 39, 42–43 (Tex. App.—Austin 2011, pet. denied) (explaining that "equitable relief" of permanent injunction must be "supported by at least one valid underlying cause of action that is established either by conclusive evidence or fact findings," just as with remedy of money damages (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513–14 & n.2 (Tex. 1993))).

[58] *See* Tex. Civ. Prac. & Rem. Code § 27.005(b)–(d).

[59] *Id*. § 27.005(c) (emphases added).

[60] *Id*. § 27.005(d) (emphases added).

burden, Section 27.006(a) directs trial courts to "consider the pleadings and supporting and opposing affidavits stating the facts on which *the liability* or *defense* is based."[61]

As we must presume the Legislature was aware,[62] Section 27.005(c)'s references to "*essential element* of the claim in question" is the nomenclature of substantive causes of action or theories of recovery, such as particular torts, not of mere petitions seeking depositions under Rule 202.[63] This is the sense in which the Texas Supreme Court has seemed to view Section 27.005(c) as well, often using "claim" in that provision interchangeably with "cause of action."[64] Similarly, one does not ordinarily raise "defenses" to a Rule 202 petition, as contemplated by Section 27.005(c), as opposed to asserting objections or grounds for protection under the

---

[61] *Id*. § 27.006(a) (emphases added).

[62] *See, e.g.*, *Allen*, 366 S.W.3d at 706 ("'A statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'" (quoting *Acker*, 790 S.W.2d at 301)); *see also* Tex. Gov't Code § 311.011(b) ("Words and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly.").

[63] *See, e.g.*, *Gharda USA, Inc. v. Control Solutions, Inc.*, 464 S.W.3d 338, 353 (Tex. 2015) (referencing "essential elements" of "negligence claim" and "manufacturing defect claim"); *Stoner v. Thompson*, 578 S.W.2d 679, 683 (Tex. 1979) ("In determining whether a cause of action was pled, plaintiff's pleadings must be adequate for the court to be able, from an examination of the plaintiff's pleadings alone, to ascertain with reasonable certainty . . . *the elements of plaintiff's cause of action and the relief sought* with sufficient information upon which to base a judgment.") (emphasis added) (citation omitted); *see also* Tex. R. Civ. P. 279 (referring to "elements" of "independent grounds of recovery or of defense"); *cf.* Tex. R. Civ. P. 202 (no reference to "elements" or "essential elements" of grounds for order).

[64] *See KBMT Operating Co. v. Toledo*, ___ S.W.3d ___, No. 14-0456, 2016 Tex. LEXIS 499, at *7 (July 17, 2016) (under Section 27.005, "KBMT was entitled to dismissal unless [the claimant] established a prima facie case for each element of a defamation cause of action."); *In re Lipsky*, 460 S.W.3d 579, 590–91 (Tex. 2015) ("clear and specific evidence" of "each essential element of the claim" requires more than "general allegations that merely recite the elements of a cause of action . . . . Instead, a plaintiff must provide enough detail to show the factual bases for its claim.").

19

civil discovery rules, let alone prove up "essential elements" to obtain that protection. And perhaps even more significantly, a Rule 202 petition does not seek to impose "liability" or interpose a "defense," the focus of the evidence according to Section 27.006(a)—the petition seeks a deposition to *investigate* potential liability or defenses or preserve *evidence* that may be relevant to liability or a defense. This analysis is incapable of being applied to a "legal action" that consists only of a Rule 202 petition. The analysis could be applied, however, to the "legal action" that consists of the underlying potential claims for relief or anticipated suit on which a Rule 202 petition is predicated—and I will return to that observation momentarily.

The Court does not contend otherwise—in fact, it acknowledges that the "claim in question" under Section 27.005 (i.e., that which has "essential elements," seeks to impose "liability," and has "defenses" with "essential elements") must necessarily refer to the alleged potential claims underlying a Rule 202 petition and not to the petition itself.[65] The Court insists, rather, that Section 27.005 leaves open the possibility that the "claim in question," while potentially a "legal action" under the TCPA definition, need not necessarily be a "legal action," such that the relevant "legal action" can be the Rule 202 petition even while the underlying potential claims are the "claim[s] in question" on which analysis focuses.[66] I will acknowledge that Section 27.005 refers to "each essential element of *the claim* in question" rather than explicitly to "each essential element of *the legal action* in question," but this is plainly the import of "each essential element of the claim in question" when read in the context of Section 27.005's burden-shifting framework and the TCPA's broader purpose to ferret out non-meritorious lawsuits that implicate expressive liberties.

---

[65] *See* slip op. at 18–19.

[66] *See id.*

20

That there is a "claim" for substantive relief placed "*in question*" by a TCPA motion to dismiss a "legal action," as Section 27.005 presumes, signals that such motions inherently seek to test the meritoriousness of that substantive claim, with the consequences of quick dismissal of that claim if it fails the testing.[67] Section 27.005 does not contemplate attacks on peripheral filings or proceedings like Rule 202 petitions as ends in themselves, as the Court holds.

The Court insists that any such doubts regarding textual support for its construction should be overlooked because the Legislature directed that the TCPA be "construed liberally to effectuate its purpose and intent fully."[68] But a legislative mandate that we "liberally construe" a statute does not authorize us to ignore, rewrite, or displace the text the Legislature has actually used[69]—nor can it, without raising separation-of-powers concerns.[70] In any event, translating the TCPA's "liberal construction" directive into a specific application of the Act is more complicated than the Court presumes. The Legislature specified that the TCPA's "purpose" is a dual mandate: "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate

---

[67] *See* Tex. Civ. Prac. & Rem. Code § 27.002 ("The purpose of this chapter [the TCPA] is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury."); *see also Serafine*, 466 S.W.3d at 375 (Pemberton, J., concurring) (suggesting that TCPA's dismissal mechanisms may operate similarly to Medical Liability Act's expert-report requirements to extent it requires threshold testing of potential meritoriousness of certain claims).

[68] Slip op. at 17 (citing Tex. Civ. Prac. & Rem. Code § 27.011(b)).

[69] *See, e.g., Holmes v. Morales*, 924 S.W.2d 920, 923–25 (Tex. 1996) (rejecting—notwithstanding Public Information Act's "liberal construction" mandate—Attorney General's "impermissible administrative limitation upon the Open Records Act's exceptions' plain language" under the then-applicable version of the law-enforcement exception).

[70] *See* Scalia & Garner, *supra* note 48, at 233, 244–46.

21

freely, and otherwise participate in government to the maximum extent permitted by law *and*, *at the same time*, protect the rights of a person to file meritorious lawsuits for demonstrable injury."[71] Consequently, the TCPA is to be "construed liberally" toward effectuating and balancing *both* expressive liberties and rights of redress.[72]

Nor does the Court's construction ultimately advance the TCPA's goal of protecting free expression, the side of the Act's balancing equation that the Court is tacitly favoring here. What the Court's construction encourages is piecemeal or seriatim "motions to dismiss" attacking myriad "legal actions" that consist merely of individual filings within or related to a lawsuit, as opposed to the underlying lawsuit and substantive claims that are the Act's core focus. As such motions proliferate, application of the TCPA strays from—and, indeed, undermines through cost and delay—its manifest purpose to secure quick and inexpensive dismissal of meritless "legal actions" that threaten expressive freedoms.[73] The Court's construction would similarly invite tactical

---

[71] *Id*. § 27.002 (emphasis added).

[72] *See Serafine*, 466 S.W.3d at 368 (Pemberton, J., concurring) ("Read in conjunction with section 27.002, this mandate [that the TCPA be 'construed liberally to effect its purpose and intent fully'] would refer to a dual duty on the part of courts to 'liberally construe' the statute both to 'encourage and safeguard the constitutional rights' protected by the statute and 'protect the rights of a person to file meritorious lawsuits for demonstrable injury.'"); *Cheniere Energy, Inc. v. Lotfi*, 449 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (emphasizing "the explicitly stated purpose of the statute, namely, to *balance* the protection of First Amendment rights against the right all individuals have to file lawsuits to redress their injuries.").

[73] *See* Tex. Civ. Prac. & Rem. Code § 27.002 (purpose); *id.* §§ 27.003–.005 (prescribing mechanisms for threshold testing and expedited dismissal of "legal actions" that implicate expression the Act protects).

gamesmanship as parties could attack successive "legal actions" of this sort as a means of circumventing the Act's deadlines for filing motions to dismiss.[74]

But there *is* a construction of the TCPA that would advance the Act's purposes in the Rule 202 context, yet remain faithful to the statute's terms. It is the one already suggested by the preceding analysis—the "legal action" is not the Rule 202 petition or proceeding in itself, but the underlying potential claim or anticipated suit that is the predicate for the petition. In addition to avoiding the burdens, inefficiencies, and potential gamesmanship invited by the Court's construction, this view of the "legal action" more importantly squares with Section 27.005 and 27.006(a) and also with the unity Section 27.003(a) requires between the person whose free expression is threatened by the "legal action" and the "party" to the "legal action" who can bring the motion. I would hold that the Legislature intended to address Rule 202 depositions under the TCPA in this manner, as opposed to deeming them stand-alone "legal actions" as the Court does.

Alternatively, even if a Rule 202 petition might fall within "legal action" in an abstract application of the TCPA's definition, I would hold for these reasons that the *relevant* "legal action" under Section 27.003(a) and (c) is the underlying potential claim or anticipated suit made the basis for the petition. As this Court's prior TCPA jurisprudence has recognized, application of the Act's "legal action" definition turns not only of whether there exists some correspondence between the definition and the particular pleading or filing at issue, but also the particular context in which external provisions of the Act are actually using or applying the term "legal action" and

---

[74] *Cf. In re Estate of Check*, 438 S.W.3d 829, 836–37 (Tex. App.—San Antonio 2014, no pet.) (rejecting attempt to effectively re-set Act's deadlines by filing successive amended petitions asserting same causes of action).

the Act's broader policies.[75]  In light of the foregoing analysis, these considerations point toward the relevant "legal action" here being the underlying potential claim or anticipated suit rather than the Rule 202 petition itself.

This construction of "legal action," to be sure, creates some potential tension with certain of the TCPA's other textual features.  Most obviously, one might ask how a party could file a "motion to dismiss"[76] or a trial court "dismiss"[77] a "legal action" that currently exists in the form of a potential or anticipated or claim or suit, as opposed to one that has already been filed.  Similarly, Section 27.003(b) sets the deadline for filing the motion to dismiss authorized in Section 27.003(a)

---

[75] Given the myriad meanings or senses of "legal action" included in the TCPA definition, the term cannot mean all these things simultaneously in all of its uses within the TCPA. Consequently, determination of whether there is a "legal action" often requires not only finding some correlation to the general definition, but also ascertaining which of the multiple alternative senses of "legal action" the Legislature intended to govern within a particular TCPA provision or application—e.g, did it intend "legal action" in the sense of an entire "lawsuit," or that of a particular "cause of action," or in the sense of a pleading instrument or filing?  This Court has acknowledged as much in its prior cases distinguishing between different claims and factual theories when applying the TCPA's mechanisms for dismissing a "legal action" that is "based on, relates to, or is in response to" protected expression, an analysis hinging logically on a view of "legal action" in the sense of a "cause of action" or individual "claim," that would have failed to the extent "legal action" referred to an entire "lawsuit" or pleading instrument.  *See Serafine*, 466 S.W.3d at 360; *see also id*. at 393–94 (Pemberton, J., concurring) (elaborating on the import of the Court's "mixed-claim" holdings).  Sister courts have also employed a similar analysis in holding that the TCPA's deadline for filing a motion to dismiss, which is tied to the date a "legal action" is served, *see* Tex. Civ. Prac. & Rem. Code § 27.003(b), is not continually reset by the filing of successive amended petitions, notwithstanding that such "petitions" are explicitly included in the "legal action" definition.  *See, e.g.*, *Estate of Check*, 438 S.W.3d at 836–37.  Such choices among alternative potential meanings of "legal action" are informed by the context of its particular usage and the TCPA's policy goals as reflected in the statute as a whole.  *See Serafine*, 466 S.W.3d at 393–94 (Pemberton, J., concurring); *Estate of Check*, 438 S.W.3d at 836–37 (taking account of TCPA's manifest purpose of facilitating early dismissal of meritless "legal actions").

[76] *See* Tex. Civ. Prac. & Rem. Code § 27.003(a).

[77] *See id.* § 27.005.

24

at the 60th day "after the date of service of the legal action" targeted by the motion,[78] other TCPA provisions refer to the "the legal action" as having been "brought,"[79] and the Act's general "legal action" definition also seems to contemplate that "legal actions" are "judicial pleadings or filings."[80] One would not ordinarily "serve" or have "brought" a "legal action" that remains merely potential or anticipated, nor would it normally be considered an existing "pleading or filing."

These potential discrepancies are resolved by remembering that a Rule 202 deposition is not an end in itself, but is in aid of an underlying potential or anticipated "legal action."[81] In this respect, the filing and service of the Rule 202 petition can be said to bring, assert, file, or serve the underlying "legal action" itself, at least to the extent of obtaining discovery in support of that "legal action." The net effect is that a Rule 202 petitioner is subject to a motion to dismiss challenging the underlying predicate "legal action" and not merely the discovery currently being sought, with the

---

[78] *Id.* § 27.003(b).

[79] *See id*. § 27.007(a) (requiring findings "regarding whether the legal action was brought to deter or prevent the moving party from exercising constitutional rights and is brought for an improper purpose"), .009(a)(2) (sanctions "against the party who brought the legal action").

[80] *See supra* at 16 (discussing *Sullivan*, 488 S.W.3d at 297–99); *but cf. Jorden*, 249 S.W.3d at 421–22 (observing that "cause of action" "generally applies to facts, not filings," and holding that "cause of action" as used in Medical Liability Act's definition of "health care liability claim" used term "in the general sense relating to underlying facts rather than a more limited sense applicable only to filed suits.").

[81] *See* Tex. R. Civ. P. 202.2 (specifying that "petition" must state either "that the petitioner anticipates the institution of a suit in which the petitioner may be a party" or "that the petitioner seeks to investigate a potential claim by or against petitioner"); *see also id*. R. 202.4 (trial court may order requested deposition on findings either that "the requested deposition may prevent a failure or delay of justice in an anticipated suit" or "the likely benefit of . . . the requested deposition to investigate a potential claim outweighs the burden or expense of the procedure"), 202.5 ("The scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed.").

discovery stayed in the meantime including not only the Rule 202 deposition being sought, but also any other discovery that might be sought "in the legal action" if the claimant proceeds to file suit. While this ramification might initially seem anomalous, it is actually consistent with an intent by the Legislature to prevent Rule 202 depositions from being used to circumvent the TCPA's protections and limitations on speech-based claims. Were it otherwise, resourceful lawyers and litigants desiring to assert a substantive claim that "is based on, relates to, or is in response to" TCPA-protected expression—i.e., one vulnerable to the TCPA's expedited dismissal mechanisms, with discovery strictly restricted in the meantime—could obtain depositions in circumvention of those protections merely by refraining from filing the claim for the time being and invoking Rule 202. The TCPA, in my view, reflects that the Legislature sought to prevent such end-runs by effectively placing Rule 202 petitioner in the same position relative to the TCPA as if they had already filed the underlying speech-based claim or suit. But the Legislature did not make Rule 202 petitions in themselves "legal actions" subject to dismissal motions, as the Court reasons.

## REGARDLESS, THE TCPA SHOULD INFORM THE JUDICIARY'S APPLICATION OF RULE 202

On the other hand, it is conceivable that the TCPA, correctly construed, does not address Rule 202 depositions at all. In that event, the Act's policies should nevertheless inform judicial application of Rule 202 in cases where the underlying potential claims or anticipated suit would implicate TCPA-protected expression. For that matter, perhaps these judicially created and administered internal limitations on Rule 202 should be the Judiciary's starting point when considering how the rule and the TCPA interact.

26

While not qualifying the remedy as "equitable relief" in the sense of the TCPA "legal action" definition, Rule 202 explains that pre-suit depositions to investigate potential claims are "equitable in nature," and a corollary, the rule adds, is that "a court must not permit it to be used inequitably."[82] Accordingly, the Texas Supreme Court has instructed, "Courts must strictly limit and carefully supervise pre-suit discovery [under Rule 202] to prevent abuse of that rule."[83] In particular, the supreme court has emphasized, Rule 202 should not be used as an "end-run around discovery limitations that would govern the anticipated suit" or to obtain by that means what would be denied in that suit.[84] Allowing Rule 202 to be used to obtain pre-suit depositions concerning potential claims that can potentially be shown to be "based on, relate[] to, or [be] in response to" TCPA-protected expression would achieve this sort of prohibited end-run to the extent trial courts do not take account of the TCPA's protections and limitations in determining whether and to what extent to allow that discovery.

More generally, precedents from both the Texas Supreme Court and this Court have recognized that judicial application of equity-rooted remedies should be informed by—and,

---

[82] Tex. R. Civ. P. 202 cmt. 2 ("The bill of discovery procedure, which Rule 202 incorporates, is equitable in nature, and a court must not permit it to be used inequitably.").

[83] *Wolfe*, 341 S.W.3d at 933.

[84] *Id*.; *accord In re Depinho*, ___ S.W.3d ___, No. 15-0284, 2016 Tex. LEXIS 385, *1, *4–11 (Tex. May 20, 2016) (per curiam) (holding that "trial court clearly abused its discretion by ordering Rule 202 depositions" to "investigate unripe claims" given that a lawsuit asserting such claims, if filed, would have been dismissed "on ripeness grounds" (citing *Wolfe*, 341 S.W.3d at 933)); *Combs v. Texas Civil Rights Project*, 410 S.W.3d 529, 535 (Tex. App.—Austin 2013, pet. denied) ("[W]hile pre-suit depositions under [R]ule 202 are not necessarily barred by sovereign immunity, governmental entities are protected from pre-suit depositions to the same extent they would be protected from the same depositions in the contemplated suit underlying the proceedings.") (citations omitted).

sometimes, altered significantly in deference to—the legislative policy judgments reflected in intervening statutory enactments, even where the statutes themselves would not directly reach the subject matter of the dispute before the court. This is the approach the high court has applied with regard to equitable prejudgment interest,[85] and this Court followed that lead in *Shook v. Walden*,[86] in which we addressed the standards or elements that a claimant would have to prove to "pierce" the "veil" of a limited-liability corporation assuming (as had the parties there) that this remedy would be available in some form against an LLC under the equitable principles that had long been held to operate against business corporations.[87] We should give similar deference to the

---

[85] *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 529-31 (Tex. 1998). Equitable prejudgment interest is the default source for such awards absents statutory or contractual authorization. *See id.* at 528. Following the supreme court's 1985 decision in *Cavnar v. Quality Control Parking*, which had the effect of expanding the availability and amount of equity-based prejudgment-interest awards compared to prior precedents, 696 S.W.2d 549, 554-55 (Tex. 1985), the Legislature had enacted a 1987 statute to govern and limit more strictly prejudgment-interest awards in cases involving "wrongful death, personal injury, and property damage," but leaving awards in most other cases to be governed by the now-more-generous background equitable principles. *See Johnson & Higgins of Tex., Inc.*, 962 S.W.2d at 529. Subsequently, in *Kenneco*, the supreme court had occasion to revisit *Cavnar* in light of the intervening statutory change. *See id.* at 529. While holding that the statute did not apply to the case at hand as a matter of proper construction, *see id.* at 529–30, the supreme court held nonetheless that the governing equitable principles for awarding prejudgment interest must take account of the Legislature's intervening balancing of policy interests reflected in its choice of interest-calculation methods for cases within the statute. *See id.* at 530–31. Accordingly, the court conformed the equitable principles to track the statutory method, *see id.*, also noting that it had done the same when fashioning a prejudgment interest accrual rule in latent-injury cases, *see id.* at 531 (citing *Owens-Illinois v. Estate of Burt*, 897 S.W.2d 765, 769 (Tex. 1995)), and had similarly looked to legislative policies reflected in statutes when fashioning tort doctrines. *See id.* (citing *Smith v. Merritt*, 940 S.W.2d 602, 604–05 (Tex. 1997) (common-law social-host liability duties informed by Dram Shop Act)).

[86] 368 S.W.3d 604 (Tex. App.—Austin 2012, pet. denied).

[87] The Legislature had not yet spoken to LLC veil-piercing through statute. *See id.* at 607. The dispute in *Shook* centered on the extent to which analysis would be governed solely by the equitable business-corporation veil-piercing principles as the Texas Supreme Court had applied them

28

Legislature's intervening balancing of interests in the TCPA and hold that it is "inequitable," and therefore beyond judicial discretion, to permit Rule 202 to be used to obtain discovery to an extent the Act would not allow.

The foregoing considerations would suggest that Rule 202's application should be constrained, as a matter of the rule's own internal limiting principles, along the following lines:

• Consistent with TCPA Sections 27.003(a) and (c), a trial court would lack discretion to grant a Rule 202 petition in the face of an objection asserting that the petition is predicated on a potential claim or anticipated suit that would be "based on, related to, or in response to" the "exercise of" the "right of free speech," "right of association," or "right to petition" as the Act defines those concepts.[88]

• It the objector can make a showing that the potential claim or anticipated suit is in fact one "based on, related to, or in response to" the "exercise of" the "right of free speech," "right of association," or "right to petition," the Rule 202 petition would be denied unless the petition can present the "prima facie" case consistent with TCPA Section 27.005(c) for each essential element of at least one underlying claim. In that event, the burden would likewise shift back to the objector consistent with Section 27.005(d).

---

in its 1986 *Castleberry* decision (a decision "perceived as a significant expansion of shareholder and director liability," as we noted, *id*. at 611–13 (discussing *Castleberry v. Branscum*, 721 S.W.2d 270, 271–75 (Tex. 1986))), or must take account of intervening statutory changes that stiffened the requirements for obtaining that remedy against a business corporation. *See id*. at 612–13 (summarizing statutory amendments). Although we held that these statutory limitations did not shield LLCs as a matter of statutory construction, *see id*. at 619, we rejected the notion that application of the equitable principles to LLCs would simply default back to tracking *Castleberry*. *See id*. Instead, following *Kenneco*'s lead, we deduced that the judicial balancing of interests inherent in determining whether the limited-liability form had been "abused" must properly take account of the Legislature's balancing of those same interests as reflected in its intervening statutory changes. *See id*. at 619–21. Accordingly, we held that the equities would require claimants seeking to "pierce" the "veil" of an LLC to meet the same requirements as if the entity were a business corporation instead. *See id*. at 621.

[88] And if lack of specificity in the petition defies this determination, the trial court should deny the petition for failure to include the contents required by Rule 202. *See* Tex. R. Civ. P. 202.2.

- Further deferring to the Legislature's judgment reflected in Section 27.006(a), the trial court would have discretion to permit "specified and limited discovery" relevant to the objection upon a showing of "good cause."

These limitations on Rule 202 depositions or discovery deriving from the TCPA would not be exclusive, of course, and other grounds for objections or protection might well come into play.[89] Like the First Amendment right to anonymous speech . . . which brings us back to the issue that should have been our focus all along.

## CONCLUSION

I agree that mandamus should conditionally issue to restrain the district court's order, but I disagree with the Court's analysis of the TCPA or that we should even address that statute here.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Bourland

Filed:   October 7, 2016

---

[89] _See_ Tex. R. Civ. P. 202.5 ("The scope of discovery in depositions authorized by this rule is the same as if the anticipated suit or potential claim had been filed."); _cf._ Tex. Civ. Prac. & Rem. Code § 27.011(a) ("This chapter [the TCPA] does not abrogate or lessen any other defense, remedy, immunity, or privilege available under other constitutional, statutory, case, or common law or rule provisions.").